**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AMERICAN CENTER FOR LAW AND JUSTICE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-cv-3711 (SLS) |
| ) | |
| **FEDERAL BUREAU OF INVESTIGATION,** ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In the months leading up to the 2020 election, the Federal Bureau of Investigation (FBI) worked to detect and oppose disinformation campaigns directed at the United States by foreign adversaries. As part of that effort, the FBI coordinated with social media companies, advising them of specific threats and assessing the overall threat level on their platforms.

This case concerns a Freedom of Information Act (FOIA) request for FBI records related to those efforts. Plaintiff challenges the FBI's authority to withhold the contents of governmental deliberations from three email chains under FOIA Exemption 5. It also contests the FBI's decision to protect the personal privacy of third parties and Department of Justice employees by withholding their identities from several records under Exemptions 6 and 7(C). And Plaintiff challenges a range of withholdings under Exemption 7(E), which protects techniques and procedures used for law enforcement investigations. All of the withheld material was exempt from disclosure, and the FBI is therefore entitled to summary judgment.

## BACKGROUND

On August 31, 2022, Plaintiff submitted a FOIA request for "records pertaining to the [FBI's] interactions with and requests to social media and news platforms, including Facebook, to censor or 'be on high alert for' information in connection with the then-upcoming election." Decl. of Amie Marie Napier ¶ 6 ("Napier Decl."). The FBI refused to confirm or deny the existence of certain responsive records, *see id.* ¶¶ 8–10, 12, which Plaintiff does not challenge here. As to the remainder of Plaintiff's FOIA request, the FBI began its production of responsive records in October 2023, *id.* ¶ 14, and completed its production in September 2025, *id.* ¶ 21.

Pursuant to this Court's minute orders of July 30 and November 25, 2025, the FBI then provided Plaintiff with a draft *Vaughn* index. Plaintiff indicated that it intended to challenge certain withholdings pursuant to FOIA Exemptions 5, 6, 7(C), and 7(E). A tabular summary of Plaintiff's challenged withholdings appears on page 12 of the Napier Declaration, and the FBI's *Vaughn* index of those withholdings is attached as Exhibit O.

## LEGAL STANDARD

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Dean v. DOJ*, 87 F. Supp. 3d 318, 320 (D.D.C. 2015) (citation omitted); *accord Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011) ("[T]he vast majority of FOIA cases can be resolved on summary judgment."). A court reviews an agency's response to a FOIA request *de novo*. 5 U.S.C. § 552(a)(4)(B).

FOIA represents a delicate balance "between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted). In drafting the statute, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of

information," and therefore "provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982). Although these exemptions are to be "narrowly construed," *id.* at 630 (citation omitted), courts must still give them "meaningful reach and application," *John Doe*, 493 U.S. at 152.

"An agency that has withheld responsive documents pursuant to a FOIA exemption can carry its burden to prove the applicability of the claimed exemption by affidavit. . . ." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). "[S]ummary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail . . . and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (quotation and citation omitted). This is not a high bar: "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* at 374–75 (citation omitted).

## ARGUMENT

Plaintiff challenges the FBI's withholdings from a discrete set of records, pursuant to FOIA Exemptions 5, 6, 7(C), and 7(E). These withholdings were proper for the reasons explained below, and the FBI is therefore entitled to summary judgment in its favor.

**A.      The challenged Exemption 5 withholdings were proper.**

Plaintiff challenges the FBI's withholdings of agency deliberations, under the deliberative process privilege, from three email chains. *See* Napier Decl. ¶¶ 32–40. These withholdings are justified under Exemption 5, which incorporates that privilege.

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C.

§ 552(b)(5).  The exemption ensures that members of the public cannot obtain through FOIA what they could not ordinarily obtain through discovery in a lawsuit against the agency. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).

Among the privileges protected by Exemption 5 is the deliberative process privilege, a privilege uniquely available to the government. *See Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 601 (D.C. Cir. 2001).  The deliberative process privilege protects "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"  *Sears, Roebuck & Co.*, 421 U.S. at 150 (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)).  The "privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions,' . . . by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) (citations omitted).  "Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions." *Sears, Roebuck & Co.*, 421 U.S. at 151.

"To qualify for withholding under Exemption 5's executive privilege, information must be both 'predecisional' and 'deliberative.'"  *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992); *see also Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014); *Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 874 (D.C. Cir. 2010); *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006).  A record "is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made," and it is "deliberative if it 'reflects the give-and-take of the consultative process.'"

*Petroleum Info. Corp.*, 976 F.2d at 1434 (citations omitted).

"To establish that [a] document is predecisional, the agency need not point to an agency final decision, but merely establish what deliberative process is involved, and the role that the documents at issue played in that process." *Judicial Watch v. Export-Import Bank*, 108 F. Supp. 2d 19, 35 (D.D.C. 2000) (citing *Formaldehyde Inst. v. HHS*, 889 F.2d 1118, 1223 (D.C. Cir. 1989)). The privilege therefore applies broadly to "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

The information withheld from the three email chains at issue here was predecisional and deliberative. In one email chain, FBI personnel "are attempting to reach consensus about whether to advise, and how to effectively advise, social media company personnel about specific threats." Napier Decl. ¶ 32. In another, FBI personnel "debate how the FBI could respond to press inquiries regarding a potential election threat, including whether or not the FBI should alert social media companies of certain tips and threats received." *Id.* ¶ 35. And in the third, FBI personnel "are attempting to reach consensus on recommendations and feedback on the notification process and associated investigative strategy of referring posts to Twitter" when the FBI concludes that those posts "possibly violate Twitter's terms of service." *Id.* ¶ 38. All of this activity is squarely within the scope of the deliberative process privilege. *See, e.g.*, *Campaign Legal Center v. U.S. Dep't of Justice*, 2025 WL 973469, at *5 (D.D.C. Mar. 31, 2025) (collecting cases and concluding that the deliberative process privilege protects deliberations over responses to press inquiries); *Public Citizen, Inc. v. U.S. Dep't of Educ.*, 388 F. Supp. 3d 29, 41 (D.D.C. 2019) ("Discussions among agency personnel about the relative merits of various positions which may be adopted are just as

a much a part of the deliberative  process as the actual recommendations and advice which are agreed upon.").

The FBI's declaration specifies the roles of the personnel involved in these deliberations and the deliberative processes in which they were engaged.  *Id.* ¶¶ 32–41; *see, e.g.*, *id.* ¶ 33 ("The parties taking part in the deliberation include FBI Supervisory Special Agents (SSA), Special Agents (SA), and general attorneys."); *id.* ¶ 34 ("The author, recipient, and copied participants of the email chain served in the FBI's San Francisco (SF) field office, FBI's Counterintelligence Division (CD) Foreign Influence Task Force (FITF), and the FBI's OGC National Security & Cyber Law Branch (NSCLB).").  It also establishes that the FBI personnel were "requesting and providing feedback, making proposals and recommendations, and working to come to a consensus on final agency decisions."  *Id.* ¶ 31; *see id.* ¶ 41.  The declaration therefore demonstrates that the information withheld from these three email chains was within the scope of the deliberative process privilege incorporated within Exemption 5.

Under the FOIA Improvement Act of 2016, Pub. L. No. 114–185, § 2, 130 Stat. 538, 539, the FBI must also show that it "reasonably foresees that disclosure would harm an interest protected" by Exemption 5.  5 U.S.C. § 552(a)(8)(A)(i)(I).  "Thus, to withhold records covered by . . .  the deliberative-process privilege, [the] agency must show that releasing the specific records sought '"would" chill future internal discussions.'"  *Emuwa v. DHS*, 113 F.4 th 1009, 1013 (D.C. Cir. 2024) (quoting *Machado Amadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020)).  The FBI has satisfied this requirement, as well, explaining that "there would be a chilling effect on . . . agency employees' willingness to share . . . raw, unrefined ideas and . . . candid feedback" in deliberations such as these "should they know it could become subject to public disclosure." Napier Decl. ¶ 42; *see id.* (explaining that "the "FBI would be seen as unwilling to shield its

- 6 -

employees' deliberations from public scrutiny").  *See, e.g.*, *America First Legal Found. v. U.S. Dep't of Justice*, 805 F. Supp. 3d 187, 213–14 (Sept. 26, 2025).

The FBI is therefore entitled to summary judgment on the propriety of the challenged withholdings under Exemption 5.

**B.      The challenged Exemption 6 and 7(C) withholdings were proper.**

Plaintiff challenges several of the FBI's withholdings of the identities of third parties of investigative interest, other third parties, and Department of Justice personnel.  These withholdings are justified under the related Exemptions 6 and 7(C), which protect personal privacy.

Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), while Exemption 7(C) exempts "records or information compiled for law enforcement purposes" when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy," *id.* § 552(b)(7)(C).  "Exemption 7(C), which requires the government to prove only that disclosure 'could reasonably be expected to constitute an unwarranted invasion of personal privacy,' is 'somewhat broader' than Exemption 6, which requires proof of a 'clearly unwarranted invasion of personal privacy.'"  *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989)).  Where the information in question, if any, "was 'compiled for law enforcement purposes,' thus implicating Exemption 7(C)," courts "have no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)."  *Id.*

And so it is here.  Exemption 7's threshold requirement that the "records or information" protected have been "compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), is readily

satisfied.  The records in question are email communications related to "the FBI's coordination with social media companies to detect activity from foreign adversaries on their platforms, analyze foreign adversaries' disinformation campaigns, and assess the overall threat of malign foreign influence on the social media platforms."  Napier Decl. ¶ 45.  The emails therefore "document the FBI's work to thwart criminal activity, combat national security threats, and defend the homeland."  *Id.*  They were plainly compiled for law enforcement purposes within the meaning of FOIA Exemption 7.  *See, e.g.*, *Passmore v. U.S. Dep't of Justice*, 245 F. Supp. 3d 191, 202 (D.D.C. 2017) (concluding that emails written in the course of an FBI investigation were compiled for law enforcement purposes).

The identities of third parties and Department of Justice personnel are protected by Exemption 7(C). "To determine whether disclosure 'could reasonably be expected to constitute an unwarranted invasion of personal privacy' for purposes of Exemption 7(C)," courts "must 'balance the privacy interests that would be compromised by disclosure against the public interest'" in the confirmation or denial of the existence of responsive records.  *Roth*, 642 F.3d at 1174 (quoting *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992)).  Significant privacy interests are at stake here.  Napier Decl. ¶¶ 50–52.

*Names in investigative files.*  As the D.C. Circuit has "'long recognized,' the '"mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation."'"  *Roth*, 642 F.3d at 1174 (quoting *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 666 (D.C. Cir. 2003), in turn quoting *Fitzgibbon*, 911 F.2d at 767).  The D.C. Circuit has "thus held that not only the targets of law-enforcement investigations, but also 'witnesses, informants, and . . . investigating agents' have a 'substantial interest' in ensuring that their relationship to the investigations 'remains secret.'"  *Id.* (quoting *Schrecker*, 349 F.3d at 666)

(ellipses in original); *accord Nation Magazine, Washington Bureau v. U.S. Customs Service*, 71 F.3d 885, 894 (D.C. Cir. 1995) (emphasizing that the privacy interest protected by Exemption 7(C) "extends to . . . witnesses and informants who provided information during the course of an investigation").

Regarding the public interest, the D.C. Circuit has "'adopted a categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is "necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity."'" *Bartko v. U.S. Dep't of Justice*, 2015 WL 9272833, at *6 (D.D.C. Dec. 18, 2015) (quoting *Schrecker*, 349 F.3d at 661, in turn quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991)). Plaintiff has not come forward with any such evidence to justify its challenge to the withholding of the identities of private citizens here.

***Department of Justice personnel.*** The privacy interests of Department of Justice employees who assist with "FBI investigative activity" are just as strong. Napier Decl. ¶ 52. As discussed above, the D.C. Circuit has held that "investigating agents have a substantial interest in ensuring that their relationship to the investigations remains secret." *Roth*, 642 F.3d at 1174 (cleaned up). That reasoning applies fully to the Department of Justice personnel whose identities have been withheld here. *See Schrecker*, 349 F.3d at 666 ("Our precedents give strong support to Government decisions to withhold names and identifying information from law enforcement records."). Nor has Plaintiff "identified a public interest that outweighs the privacy interests of the law enforcement personnel whose identifying information was withheld under Exemption 7(C)." *Barouch v. U.S. Dep't of Justice*, 87 F. Supp. 3d 10, 29 (D.D.C. 2015); *see Pinson v. U.S. Dep't of Justice*, 245 F. Supp. 3d 225, 251 (D.D.C. 2017).

For the reasons set forth above, the challenged withholdings are within the scope of Exemption 7(C), and the FBI is therefore entitled to summary judgment on the propriety of the challenged withholdings. *See Ball v. U.S. Marshals Serv.*, 2021 WL 4860590, at *9 (D.D.C. Oct. 19, 2021) ("When Exemption 7(C) is invoked . . . the justifications for non-disclosure generally are also sufficient evidence of foreseeable harm.").

## C.      The challenged Exemption 7(E) withholdings were proper.

Exemption 7(E) protects records or information compiled for law enforcement purposes—as the email communications at issue here were, *see supra* at 7–8—when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The D.C. Circuit has explained that "Exemption 7(E) sets a relatively low bar for the agency to justify withholding." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). To clear that "relatively low bar," an agency must show only that the release of information might increase the risk "that a law will be violated or that past violators will escape legal consequences." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009). That is the case for each of the categories of information that the FBI has withheld here.

The majority of the challenged Exemption 7(E) withholdings were made to protect "non-public, sensitive investigative methods the FBI uses to collect and analyze information it obtains for investigative purposes." Napier Decl. ¶ 57. Disclosure of this information would reveal "how and from where the FBI collects information and the methodologies employed to analyze it once collected." *Id.* In the records at issue here, "the FBI utilized these investigative methods to collect and analyze specific portions of both non-public and public source information to launch

investigative activities geared towards eliminating the prospective threat of foreign disinformation and malign influence on social media platforms and by extent, prevent the infiltration of foreign influence in the United States' election process." *Id.* ¶ 58. Releasing this information "would enable criminals to educate themselves about the specific investigative techniques employed for the collection and analysis of information and therefore, allow these individuals to take countermeasures to circumvent the effectiveness of these techniques and to continue to violate the law and engage in intelligence, terrorist, cyberespionage, and other criminal activities." *Id.* ¶ 60. This information about the techniques and procedures used to collect and analyze information in the investigations at issue here is therefore within the scope of Exemption 7(E). *See, e.g.*, *Shapiro v. U.S. Dep't of Justice*, 2020 WL 3615511, at *39 (D.D.C. July 2, 2020) (upholding "the FBI's use of Exemption 7(E) to withhold information regarding the collection and analysis of information by the agency").

Information about non-public "focuses of specific FBI counterintelligence investigative activities," which was withheld from a single page of records, was also within the scope of Exemption 7(E). Napier Decl. ¶ 61. "Revealing this information . . . would alert [the investigative targets] to the FBI's interest in their activities, allowing them to take active measures to conceal and destroy evidence or modify their behavior to avoid future investigative scrutiny." *Id.* The release of this information would also "reveal the scope of the FBI's gathered evidence and intelligence on foreign actors potentially propagating malign influence on United States' elections, connections it has discovered between different foreign adversaries, and the strategies it plans to pursue to prevent or disrupt further criminal and national security threats," thereby "allow[ing] these foreign adversaries to predict the FBI's investigative strategies and modify their activities or operational security measures to thwart FBI investigative efforts." *Id.* This information about the

investigative focus of a specific investigation is therefore within the scope of Exemption 7(E). *See, e.g.*, *Poitras v. DHS*, 303 F. Supp. 3d 136, 159 (D.D.C. 2018) (upholding the FBI's use of Exemption 7(E) to withhold information regarding the investigative focus of a specific investigation).

Information concerning investigative details of the FBI's coordination with other government agencies, which was withheld from six pages of records, was also within the scope of Exemption 7(E). Napier Decl. ¶ 64. "Release of this information in the context of these records would reveal which types of investigative information and data the FBI deems relevant enough to refer to . . . certain" agencies. *Id.* "[R]elease of this information" concerning "non-public coordination would allow criminals and in particular, foreign adversaries to structure their behavior to avoid investigative triggers that would initiate an investigative referral from the FBI to its partners, and investigative scrutiny by additional government agencies." *Id.* This information about coordination with other government agencies is therefore within the scope of Exemption 7(E).

Finally, internal FBI email addresses and telephone numbers, which were withheld from two pages at issue here, are also within the scope of Exemption 7(E), because releasing this information "could provide criminals with specific targets for possible cyber-attacks and other types of attacks on FBI secure communications." Napier Decl. ¶ 56. *See, e.g.*, *Merlmerlstein v. FBI*, No. 19-cv-00312, 2021 WL 3455314, at *15 (E.D.N.Y. Aug. 4, 2021) (approving withholding of "internal email addresses" under Exemption 7(E)); *Gatson v. FBI*, No. CV 15-5068, 2017 WL 3783696, at *14 (D.N.J. Aug. 31, 2017) (approving withholding of law enforcement "intra-agency email addresses" under 7(E)), *aff'd*, 779 F. App'x 112 (3d Cir. 2019).

Moreover, all of the information within the scope of Exemption 7(E) was properly withheld because the FBI reasonably foresees that releasing it would "harm an interest protected by" that exemption. 5 U.S.C. § 552(a)(8)(A)(i). As another court in this district has observed, "Exemption 7(E) by its own terms already requires that an agency show a risk of foreseeable harm." *Groenendal v. Executive Office for U.S. Attorneys*, 2024 WL 1299333, at *12 (D.D.C. Mar. 27, 2024) (quoting *Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 127–28 (D.D.C. 2021)); *see Holmes-Hamilton v. FBI*, 2024 WL 3924558, at *6 (D.D.C. Aug. 23, 2024). "Put another way, an agency's ability to demonstrate that the release of certain specific material 'might create a risk of circumvention of the law' provides, at minimum, a strong 'clue[ ]' that disclosure will lead to the type of harm that Exemption 7(E) aims to prevent." *Reps. Comm. for Freedom of the Press v. FBI*, 754 F.Supp.3d 56, 67 (D.D.C. 2024) (quoting *Project for Priv. & Surveillance Accountability, Inc. v. DOJ*, 2024 WL 2864191, at *8 (D.D.C. June 6, 2024) (alteration in original)) ("*PPSA*"); *see also Kendrick v. FBI*, 2022 WL 4534627, at *10 (D.D.C. Sept. 28, 2022) ("The proper assertion of 7(E) goes a long way to show the risk of foreseeable harm from disclosure."), *aff'd*, No. 22-5271, 2023 WL 8101123 (D.C. Cir. Nov. 21, 2023). "If release of the information increases the risks that a law will be violated or that past violators will escape legal consequences, then it stands to reason that releasing the information would actually impede the interests protected by Exemption 7(E)." *PPSA*, 2024 WL 2864191, at *8 (cleaned up). That is the situation here: revealing the investigative techniques and procedures withheld under Exemption 7(E) would foreseeably harm the interests protected by that exemption, by risking circumvention of the laws that the FBI enforces. *See* Napier Decl. ¶¶ 56–64.

**D.     All reasonably segregable non-exempt information has been released.**

Under FOIA, "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Accordingly, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). An agency has no obligation to segregate non-exempt material that is so "inextricably intertwined" with exempt material that "the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." *Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981), *abrogated on other grounds by Church of Scientology of Calif. v. IRS*, 792 F.2d 153 (D.C. Cir. 1986); *see also Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220–21 (D.D.C. 2005) (same). A court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. DOJ*, 518 F.3d 54, 61 (D.C. Cir. 2008) (citation omitted). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

The FBI affirms that it conducted a detailed review of the challenged withholdings and released all reasonably segregable nonexempt information. Napier Decl. ¶ 66. It has therefore complied with its statutory obligations.

## CONCLUSION

The Court should enter summary judgment in favor of the FBI.

- 15 -

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

*/s/ James Bickford*
JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

*Counsel for Defendant*

Date: March 4, 2026