UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN CENTER FOR LAW AND
JUSTICE,

   Plaintiff,

  v.

FEDERAL BUREAU OF INVESTIGATION,

   Defendant.

Civil Action No. 22-cv-3711 (SLS)

## SECOND DECLARATION OF AMIE MARIE NAPIER

I, Amie Marie Napier, declare as follows:

1.  I am the Section Chief of the Record/Information Dissemination Section, Information Management Division, Federal Bureau of Investigation (FBI), Winchester, Virginia. My previous declaration in this matter, dated March 4, 2026, explained my employment history and responsibilities at the FBI. *See* ECF No. 31, ¶ 1-2 (hereafter referred to as "First Napier Declaration"). This declaration supplements, and hereby incorporates by reference, the information previously provided in the First Napier Declaration and is submitted in further support of the Defendant's Motion for Summary Judgment and to address the issues raised in the Plaintiff's Cross Motion for Summary Judgment and Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment dated April 1, 2026. *See* ECF No. 32 (hereafter referred to as "Plaintiff's Opposition").

2.  The background of this matter is set forth in the First Napier Declaration and will not be fully recounted. Only information directly relevant to Plaintiff's Opposition is discussed herein. In Plaintiff's Opposition, Plaintiff challenges the FBI's harm analysis, justification for

nondisclosure, application of Exemptions 5, 6, 7(C), and 7(E), and the veracity of reasonable segregation on the particular documents at issue. This supplemental declaration addresses each claim individually. The FBI submits this supplemental declaration to provide further clarification and to address the arguments raised in Plaintiff's Opposition.

## DEFENDANT'S RESPONSES TO PLAINTIFF'S OPPOSITION

### FOIA EXEMPTION 5 – PRIVILEGED INFORMATION

*(b)(5)-1: Deliberative Process Privilege*

3.       As described in paragraphs ¶¶ 28-31 of the First Napier Declaration, the FBI relied on Exemption 5 and the Deliberative Process Privilege to protect portions of email communications which were deliberative and pre-decisional. These communications reflect inter-agency deliberations as agency employees are requesting and providing unrefined feedback, unabashedly sharing recommendations and analysis on specific strategies and proposals, and striving to come to a consensus on final agency actions in assessing the overall threat of malign foreign influence on United States' social media companies. The FBI will discuss each of the disputed email communications in turn.

### October 26, 2020 Email Communication

4.       In Plaintiff's Opposition, Plaintiff contends that the information protected with Exemption 5 on Bates page 66 is factual information summarized by an FBI agent. (ECF No. 32, pages 4-5). In the October 26, 2020 email communication, FBI field office, operational division, and Office of General Counsel (OGC) personnel are striving to reach agreement on whether to advise, and how to effectively advise, social media company personnel about specific threats. No final decision has been reached at the time of this discussion. The email communication serves as

2

an open forum for FBI personnel belonging to the San Francisco (SF) field office, FBI's

Counterintelligence Division (CD) Foreign Influence Task Force (FITF), and the FBI's OGC

National Security & Cyber Law Branch (NSCLB) to deliberate on if the collected information is

worthy of sharing with a social media company. The communication is not a mere factual

summation, but instead consists of FBI employees actively weighing options and in turn,

postulating the pros and cons associated with a particular strategy of coordination with a social

media company.

5.      To further demonstrate the pre-decisional deliberation occurring on Bates page

66, the FBI has provided a reprocessed copy which illustrates the applicability of Exemption 5.[1]

(Ex. A)

October 28, 2020 Email Communication

6.      Plaintiff's Opposition delineates that the email conversation taking place on the

top of Bates page 126 is a summary of a conversation with Facebook. (ECF No. 32, pages 5-6).

Upon further review of the paragraph at issue, the FBI is withdrawing its application of

Exemption 5 within the top email on Bates page 126. The FBI continues to assert Exemption

7(E) on portions of the specific email at issue. A reprocessed copy is provided to establish the

additionally segregable material. (Ex. B.)

June 2, 2020 Email Communication

7.      Plaintiff's Opposition challenges the validity of the FBI's Exemption 5

application on Bates page 202. Plaintiff argues that the information protected with Exemption 5

---

[1] The reprocessed version of Bates page 66 contains the additionally released phrase "Wondering if we can/should" and the sentence "Let me know your thoughts" at the conclusion of the first paragraph, which further indicates the back and forth deliberation occurring in this email chain. In addition, the material protected with Exemption 5 on Bates page 66 is also protected with Exemption 7(E).

3

is post-decisional facts and factual summary information. (ECF No. 32, pages 6-7). For this email communication, FBI field office and operational division personnel are attempting to reach consensus on recommendations and feedback on the notification process and associated investigative strategy of referring posts to Twitter which possibly violate Twitter's terms of service. The protected information is not post-decisional facts or factual summary information. The email communication exists as the primary vehicle for deliberation between FBI Supervisory Special Agents (SSAs), Special Agents (SAs), and Intelligence Analysts (IAs) to share pre-decisional opinions and thought processes for managing the notification process of Twitter terms of service violations and subsequent investigative activities undertaken in response to such violations. The information protected with Exemption 5 contains interagency coordination on what FBI offices may assist or respond to incidents of harmful influence on United States' elections.

8.      To supplement the FBI's attestation that pre-decisional deliberation occurs on Bates page 202, the FBI is revealing additional information. The FBI has provided a reprocessed copy which demonstrates the applicability of Exemption 5.[2] The targeted release of these phrases further supports the FBI's substantiation that the protected information is pre-decisional and deliberative. (Ex. C.)

---

[2] In the first Exemption 5 redaction on Bates page 202, the newly released material begins with the statement "I'm in coordination with [WITHHELD] to determine…" and the second Exemption 5 redaction begins with the introduction "Do you want to loop in…".

FOIA EXEMPTIONS 6 AND 7(C):
CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY

*(b)(6)-5 and (b)(7)(C)-5: Names and Identifying Information of Non-FBI Federal Government Personnel*

9.    In Plaintiff's Opposition, Plaintiff advises that it continues to challenge the applicability of Exemptions 6 and 7(C) as it applies to names and identifying information of non-FBI federal government personnel on Bates pages 199 and 1038.[3]

10.    As discussed in paragraph ¶ 52 of the First Napier Declaration, the FBI protected the names of personnel from non-FBI federal government agencies. The FBI withheld the names of government employees assigned to other DOJ components who are integral to the development and strengthening of partnerships core to the FBI's investigative priorities.

11.    As stated in the First Napier Declaration, ¶¶ 48-49, the FBI is required to balance the privacy interests of the individuals mentioned in the records against any public interest in disclosure. A public interest exists only when information about an individual, such as the individual's name, or other identifying information, would shed light on the operations and activities of the FBI.

12.    It is the FBI's ordinary policy to release names of high-ranking government officials and of individuals in public-facing positions, as they have diminished privacy rights while acting in their official capacity. This policy is applied to the individual's position at the time that the relevant document was created, and not the present.

---

[3] Plaintiff has withdrawn its challenges concerning the coded exemption categories (b)(6)-3/(b)(7)(C)-3, Names and Identifying Information of Third Parties Merely Mentioned and (b)(6)-4/(b)(7)(C)-4, Names and Identifying Information of Third Parties of Investigative Interest. (ECF No. 32, page 10)

13.    The FBI does not typically disclose non-FBI employee information unless that employee is a member of the Senior Executive Service (SES)[4] or is in a public-facing role in the government. The FBI will typically release the name of an employee, however, if the employee has been officially acknowledged as a government employee, such as within a Department of Justice (DOJ) or FBI Press Release and has been officially and publicly associated with a particular matter where that employee is acting in his or her official role.

14.    In the records at issue here, the FBI applied the above rationale when determining if non-FBI federal government employees' names should be disclosed. Where withheld in the records at issue here, the FBI determined that the employees from other DOJ components maintain substantial privacy interests in not having their names disclosed and that no public interest would be served by disclosing their names because such disclosure would not significantly increase the public's understanding of the FBI's operations and activities. The FBI did not withhold the names of federal government employees who were SES, acting in a public-facing role, or which had been publicly and officially associated with the matters reflected in the records at issue here. Similarly, the FBI did not withhold the name of President Biden, a cabinet official, or other senior level official on these pages as Plaintiff speculates.

---

[4] The SES was established by Title IV of the Civil Service Reform Act (CSRA) of 1978 (Pub. L. 95-454, October 13, 1978) and became effective on July 13, 1979. The SES covers positions in the executive branch that are classified above GS-15 or are in level IV or V of the Executive Schedule, or equivalent positions, which are not required to be filled by Presidential appointment with Senate confirmation, and are responsible for executive, managerial, supervisory, and policy functions. Pursuant to 5 U.S.C. § 3151, the FBI SES (also known as FBI-DEA SES) positions are classified above the GS-15 level and are most responsible for directing the mission and activities of the FBI. For example, the assistant director in charge and the special agent in charge at an FBI field office, and as well the section chief (and above) at FBI Headquarters, are considered SES personnel.

EXEMPTION (b)(7)(E): LAW ENFORCEMENT INVESTIGATIVE TECHNIQUES AND
PROCEDURES

15.    Plaintiff asserts that the FBI's application of Exemption 7(E) is improper.[5]

Particularly, Plaintiff advises that the public is aware of investigative techniques and methods the

FBI employs to complete its unique law enforcement mission.

16.    While it is possible for Plaintiff and the general public to know or be aware of

certain investigative techniques the FBI employs, the FBI is protecting specific, non-public

details concerning investigative techniques in the context of these specific records and how it

utilizes certain investigative methods in its coordination with social media companies. The FBI

will further discuss each of the coded exemption categories associated with Exemption 7(E)

which are in the documents at issue.

*(b)(7)(E)-4: Collection and Analysis of Information*

17.    As discussed in paragraphs ¶¶ 57-60 of the First Napier Declaration, the FBI

protected information concerning non-public, sensitive methods in the specific context of these

records. The FBI employs these investigative methods to collect and analyze information it

obtains for investigative purposes.

18.    The FBI completed a robust harm analysis and determined that disclosure of these

non-public, sensitive investigative methods used in the collection and analysis of information

would enable bad actors and specifically, foreign adversaries, to circumvent these or similarly

used techniques. Malign foreign actors and adversaries who have knowledge of the withheld

information would utilize that insight to render the FBI's investigative methods and associated

collection and analysis of information inoperable.

---

[5] Plaintiff advises that it has withdrawn its challenges to coded exemption category (b)(7)(E)-3,
FBI Internal E-mail Addresses and Telephone Numbers on Bates pages 94 and 419.

19.     The information withheld from Bates page 96 on this basis concerns non-public investigative details that would not be included in forthcoming press releases, and the conclusions that members of the public might be able to draw from the details that would be released.

*(b)(7)(E)- 5: Investigative Focus of Specific Investigation*

20.     As discussed in paragraphs ¶¶ 61-63 of the First Napier Declaration, the FBI protected information concerning the non-public focuses of specific FBI counterintelligence investigative activities. The FBI withheld non-public, sensitive details that would identify specific targets of investigative interest in an effort to avoid prematurely alerting these individuals or foreign adversaries of their status as investigative targets.

21.     If a specific target of FBI counterintelligence investigative activities in the records at issue here became aware of his or her status, then such insight would allow individuals to take active measures to conceal and destroy evidence, modify their behavior and routines, and alter their activities to avoid further detection and investigative scrutiny and circumvent the law. So too, revealing the broader focuses of interconnected counterintelligence investigations would essentially provide criminals direct insight into the scope of the FBI's gathered evidence and intelligence, thereby "connecting the dots." With such knowledge, criminals would then exploit vulnerabilities in the FBI's intelligence gathering capabilities. Therefore, premature disclosure of this non-public information would render the FBI's investigative strategy moot.

22.     Releasing the focus of specific FBI counterintelligence investigations would allow targets of these investigations to thwart FBI efforts to investigate and disrupt their activities. Release of such information, essentially disclosing the FBI's "playbook" of actions it takes in certain situations, would stunt the FBI's broader strategies for pursuing interrelated

investigations and provide key information to criminals about FBI investigative strategies for pursuing counterintelligence investigations.

*(b)(7)(E)-14: Non-Public Investigative Details Concerning Coordination with Other Government Agencies (OGAs)*

23.     As stated in paragraph ¶ 64 of the First Napier Declaration, the FBI withheld non-public, investigative details pertaining to specific aspects of its coordination with Other Government Agencies (OGAs) in the records at issue. The FBI protected this information because it would reveal that the FBI located investigative information on a subject matter which is relevant to the purview of specific OGAs.

24.     Revealing this non-public, investigative information on the subject matter relevant to the investigative purview of specific OGAs would allow criminals to predict and circumvent FBI investigative coordination with its governmental partners. Release of this information in the context of these records would not only disclose the scope of the information collected but would also inform criminals of which types of investigative information and data the FBI deems relevant enough to refer to or collaborate with certain OGAs for further investigation or coordination. Disclosure of these non-public investigative details concerning investigative information sharing and coordination with OGAs within the records at issue here, would damage the viability of national security and intelligence agencies to carry out their mission and allow for circumvention of the law.

## FORESEEABLE HARM STANDARD

25.     As discussed in ¶ 65 of the First Napier Declaration, the FOIA Improvement Act of 2016 generally adopted the foreseeable harm standard and made it statutory, advising that agencies shall withhold information under the FOIA only if the agency reasonably foresees that

9

disclosure would harm an interest protected by an exemption or disclosure is prohibited by law. The FBI's analysis of responsive records subject to the FOIA is a two-part process. First, the FBI determines whether a record or a portion of a record is exempt pursuant to one or more FOIA exemptions. Second, if the record or portion thereof is exempt pursuant to one or more FOIA exemptions, the FBI then considers whether foreseeable harm would result from disclosure of the record or portion thereof. For the withheld records and portions of withheld records at issue here, the FBI conducted this two-part analysis and only withheld records and portions of records where it determined the withheld record or portion met both criteria.

## SEGREGABILITY

26.    As discussed in ¶ 4 of the First Napier Declaration, the FBI identified a total of 120 responsive pages specifically challenged by Plaintiff for this FOIA litigation: 118 Released in Part (RIP) and 2 Withheld in Full (WIF). Each of these categories is discussed below to further address segregability:

    a.  Pages RIP. Following its segregability review, FBI determined 118 pages could be released in part with redactions per the identified FOIA exemptions herein. These pages comprise a mixture of material that could be segregated for release and material that was withheld as release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions on these pages.

    b.  Pages WIF. Following its segregability review, FBI determined 2 pages required withholding in their entirety. FBI determined that all information on these pages was either fully covered by one or more of the cited FOIA exemptions and release of any exempt information would trigger foreseeable

harm to one or more of the cited FOIA exemptions, or determined that any non-exempt information on these pages was so intertwined with exempt material, no information could be reasonably segregated for release. Any further segregation of this intertwined material would employ finite resources only to produce disjointed words, phrases, or sentences, that taken separately or together, would have minimal or no informational content.

## CONCLUSION

27.    The FBI performed adequate and reasonable searches for responsive records, processed all such records, and released all reasonably segregable non-exempt information from documents responsive to Plaintiff's FOIA request that are subject to FOIA. The FBI processed the records under the access provisions of the FOIA to achieve maximum disclosure. Information was properly withheld pursuant to FOIA Exemptions 5, 6, 7(C), and 7(E). The FBI carefully examined the documents and determined the information withheld from Plaintiff's in this case, if disclosed would reveal privileged information; would cause a clearly unwarranted invasion of personal privacy, or would reasonably be expected to constitute an unwarranted invasion of personal privacy; and would disclose techniques and procedures for law enforcement investigations. After extensive review of the documents at issue, the FBI determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through C attached hereto are true and correct copies.

AMIE NAPIER

Digitally signed
by AMIE NAPIER
Date: 2026.04.15
15:09:30 -06'00'

AMIE MARIE NAPIER
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia