**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN CENTER FOR LAW AND JUSTICE, <br><br> *Plaintiff*, <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION, <br><br> *Defendant*. | Civil Action No. 22‑3711 (SLS) <br><br> Judge Sparkle L. Sooknanan |

## <u>MEMORANDUM OPINION</u>

The American Center for Law and Justice (ACLJ) is a nonprofit organization that promotes government transparency and accountability. In August 2022, ACLJ submitted a Freedom of Information Act (FOIA) request to the Federal Bureau of Investigation (FBI) seeking records relating to the FBI's interactions with social media and news platforms to "censor" or "be on high alert for" information in connection with the 2020 election. After ACLJ filed this lawsuit, the FBI provided many of the records that ACLJ requested. But it withheld certain pieces of information that it claims would reveal the agency's internal deliberations or its investigatory techniques and procedures. The FBI now moves for summary judgment, asserting that its withholdings are supported by FOIA Exemptions 5 and 7(E). ACLJ disagrees and cross-moves for summary judgment. For the reasons explained below, the Court grants summary judgment in the FBI's favor and denies ACLJ's cross-motion.

## BACKGROUND

### A.    Statutory Background

"FOIA 'implement[s] a general philosophy of full agency disclosure.'" *Informed Consent Action Network (ICAN) v. NIH*, No. 23-cv-926, 2026 WL 585104, at \*1 (D.D.C. Mar. 3, 2026) (alteration in original) (quoting *DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 754 (1989)). The statute "requires every federal agency, upon request, to make 'promptly available to any person' any 'records' so long as the request 'reasonably describes such records.'" *Assassination Archives & Rsch. Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting 5 U.S.C. § 552(a)(3)). "Agencies must construe FOIA requests liberally and can only withhold or redact documents if the information requested 'falls within one of nine statutory exemptions.'" *ICAN*, 2026 WL 585104, at \*1 (quoting *People for the Ethical Treatment of Animals* (*PETA*) *v. NIH*, 745 F.3d 535, 540 (D.C. Cir. 2014)); *see* 5 U.S.C. § 552(b)(1)–(9). These exemptions demonstrate that the public's right to information is "not absolute and that disclosure of certain information 'may harm legitimate governmental or private interests.'" *Martin v. DOJ*, 488 F.3d 446, 453 (D.C. Cir. 2007) (quoting *Summers v. DOJ*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)). The agency bears the burden of establishing that an exemption applies and ordinarily "must disclose all reasonably segregable, nonexempt portions of the requested record(s)." *PETA*, 745 F.3d at 540 (cleaned up).

### B.    Factual & Procedural Background

The Court draws the facts from the Statements of Material Facts submitted by the Parties and the underlying materials referenced in those statements. *See* Def.'s Statement of Material Facts (DSOF), ECF No. 30-1; Pl.'s Statement of Material Facts (PSOF), ECF No. 32-4. The Court assumes the facts in those statements to be true unless they have been specifically disputed, and it

assumes the truth of other undisputed statements in the record. *See* Fed. R. Civ. P. 56(e)(2); *see also* LCvR 7(h)(1).[1]

On August 31, 2022, ACLJ submitted a FOIA request for "records pertaining to the [FBI's] interactions with and requests to social media and news platforms, including Facebook, to censor or 'be on high alert for' information in connection with the then-upcoming [2020] election." DSOF ¶ 1 (first alteration in original); *see also* Napier Decl., Ex. A, ECF No. 31-1; *id.*, Ex. D at 4, ECF No. 31-4. This included interactions regarding the "distribution of . . . stories or information about Hunter Biden." Napier Decl., Ex. A at 3–5. On October 3, 2022, the FBI informed ACLJ that ACLJ had "requested information on one or more third party individuals and the FBI would neither confirm nor deny the existence of such records pursuant to FOIA exemptions 6 and 7(C)." Napier Decl. ¶ 8, ECF No. 31; *see also id.*, Ex. C, ECF No. 31-3.

ACLJ administratively appealed the FBI's decision. Napier Decl. ¶ 9; *id.*, Ex. D. And shortly thereafter, on December 13, 2022, ACLJ filed this lawsuit alleging that the FBI was improperly withholding documents responsive to its request. Compl., ECF No. 1. On January 20, 2023, the Department of Justice's Office of Information Policy affirmed the FBI's earlier response to ACLJ's request but clarified that the response "only pertained to subpart 10" of the request. Napier Decl. ¶ 12 n.4. For the remaining subparts, the FBI conducted a search for potentially responsive documents and made monthly interim releases to ACLJ. *Id.* ¶ 13. The FBI completed its production in September 2025 and provided a draft *Vaughn* index to ACLJ shortly thereafter. DSOF ¶¶ 3–4. In response, ACLJ stated an intent to challenge certain withholdings under FOIA Exemptions 5, 6, 7(C), and 7(E). DSOF ¶ 5.

---

[1] Local Rule 7(h) provides that "the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1).

The FBI moved for summary judgment on March 4, 2026, asserting that all the withheld information was exempt from disclosure. Def.'s Mot., ECF No. 30. ACLJ opposed and cross-moved for summary judgment on April 1, 2026. Pl.'s Mot., ECF No. 32; Pl.'s Opp'n, ECF No. 33. Both motions are ripe for decision. Def.'s Opp'n & Reply, ECF No. 34; Pl.'s Reply, ECF No. 36.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA suit, an agency is entitled to summary judgment if it establishes that "no material facts are in dispute" and that all information subject to a request has either "been produced or is wholly exempt from the Act's inspection requirements." *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (cleaned up).

Typically, an "agency demonstrates the applicability of a FOIA exemption by providing affidavits regarding the claimed exemptions." *Shapiro v. DOJ*, 893 F.3d 796, 799 (D.C. Cir. 2018). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)).

4

## DISCUSSION

The records at issue are approximately 120 pages of email communications. And the Parties' dispute centers on the FBI's invocation of FOIA Exemptions 5 and 7(E) to redact certain portions of those emails. The Court addresses each exemption in turn.[2]

### A.    Exemption 5

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "To qualify under this exemption, a document must 'satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it.'" *Welter v. U.S. Dep't of the Air Force*, No. 22-cv-3738, 2026 WL 1243400, at *3 (D.D.C. May 6, 2026) (quoting *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)); *see also Rockwell Int'l Corp. v. DOJ*, 235 F.3d 598, 606 (D.C. Cir. 2001) ("The test under Exemption 5 is whether the documents would be routinely or normally disclosed upon a showing of relevance by a party in litigation with the agency." (cleaned up)).

Relevant here, Exemption 5 includes the deliberative-process privilege. *Klamath Water Users*, 532 U.S. at 8. "To carry its burden at summary judgment, the government must demonstrate that (A) the materials at issue are covered by the deliberative process privilege, and (B) it is reasonably foreseeable that the release of those materials would cause harm to an interest protected

---

[2] At the outset of summary judgment briefing, ACLJ also disputed the FBI's withholding of information under FOIA Exemptions 6 and 7(C). The FBI has since reprocessed certain documents and provided a supplemental declaration further supporting its withholdings. Second Napier Decl., ECF No. 34-2; *id.*, Exs. A–C, ECF Nos. 34-3, 34-4, 34-5. Through those actions and others, the Parties were able to narrow their disputes. *See* Second Napier Decl. ¶ 6 (withdrawing application of Exemption 5 to disputed redaction); Pl.'s Reply 4 (withdrawing challenge to redactions made under Exemption 6 and 7(C)).

by that privilege." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021); *see* 5 U.S.C. § 552(a)(8)(A)(i)(I). ACLJ does not dispute that the source of the emails at issue is a government agency, "so the remaining questions are whether the FBI has proven entitlement to the privilege as well as reasonably foreseeable harm." *Welter*, 2026 WL 1243400, at *3. As explained below, the FBI has cleared both hurdles.

### 1.    Deliberative Process Privilege

"[T]o be covered by the deliberative process privilege, [a] document must be 'both predecisional and deliberative.'" *Id*. at *4 (quoting *Reps. Comm.*, 3 F.4th at 362). "A document is predecisional if it was 'generated before the agency's final decision on the matter[.]'" *Reps. Comm.*, 3 F.4th at 362 (quoting *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021)). And it "is deliberative" if it was "prepared to help the agency formulate its position and it reflects the give-and-take of the consultative process." *Id.* (cleaned up). "In practice, these requirements 'tend to merge.'" *Hall & Assocs. v. EPA*, 633 F. Supp. 3d 35, 52 (D.D.C. 2022) (quoting *Access Reps. v. DOJ*, 926 F.2d 1192, 1195 (D.C. Cir. 1991)).

The FBI has withheld portions of email chains from three different dates under the deliberative process privilege. To support those withholdings, the FBI has submitted two declarations from Amie Marie Napier, the Section Chief of the FBI's Record/Information Dissemination Section, to justify its withholdings. Napier Decl.; Second Napier Decl., ECF No. 34-2. Ms. Napier attests that the "portions . . . of email communications" withheld under Exemption 5 "reflect deliberations" between FBI personnel as they "work[ed] to come to a consensus on final agency decisions about assessing the overall threat of malign influence on United States' social media companies and specific actions that should be taken to alert [those] companies." Napier Decl. ¶¶ 30–31. According to Ms. Napier, these deliberations were "based on

6

specific selected facts and details exchanged and debated amongst the[] employees." *Id.* ¶ 30. And Ms. Napier goes further to detail the nature of the withholdings for the email communications on each date. *Id.* ¶¶ 32–34 (explaining that the October 26, 2020, email communication was "the primary vehicle enabling FBI personnel to discuss whether or not to share information the FBI collected with a social media company" and involves "subject-matter experts attempting to reach a consensus on final agency decisions about assessing the overall threat to malign foreign influence on United States' social media companies and specific actions that should be taken to alert social media companies of those threats"); *id.* ¶¶ 35–37 (explaining that the October 28, 2020, email communication "allow[ed] FBI employees to articulate the pros and cons of how to proceed with media engagement and future interaction with social media companies" involving "unrefined recommendations and analysis"); *id.* ¶¶ 38–40 (explaining that the June 2, 2020, email communication involved FBI personnel "attempting to reach consensus on recommendations and feedback on the notification process and associated investigative strategy of referring posts to Twitter"). The Court concludes that the FBI has adequately justified these withholdings under Exemption 5. *See* Napier Decl. ¶ 25 (identifying all challenged withholdings).

ACLJ contests the FBI's justifications for its Exemption 5 withholdings on two primary grounds. It argues that portions of the redacted materials do not appear to be covered by the deliberative process privilege because they either describe post-decisional acts or provide factual summary. Pl.'s Mot. 4–7; Pl.'s Reply 1–4. Specifically, ACLJ points to two email chains that it claims contain information that was improperly withheld. The Court has reviewed the email chains and is not convinced.

The first email chain is from October 26, 2020, and begins as follows:

**From:** _____ (FBI)
**Subject:** FW: _____
**To:** _____ (FBI)
**Cc:** _____ (FBI); _____ (FBI); _____
_____ (FBI); _____ (FBI)
**Sent:** October 26, 2020 9:44 AM (UTC-04:00)
**Attached:** _____

Wondering if we can/should _____
_____ Let me know your thoughts.
_____

**From:** _____ (FBI) _____
**Sent:** Monday, October 26, 2020 9:29 AM
**To:** _____ (FBI) _____
**Subject:** _____

_____

Here is the open-source report regarding the _____ account associated with
_____
_____

Thanks,

- _____

Second Napier Decl., Ex. A, ECF 34-3. ACLJ asserts that the redacted portion of the email at 9:29 AM appears to be an FBI agent's summary of a publicly available "statement by a third party." Pl.'s Mot. 5. That summary, according to ACLJ, is a factual statement that should be released. *Id*. And it contends that the same is true of "the names of the memoranda or other records" that are attached to the 9:44 AM email to the extent that they also contain "factual summaries." *Id*.

ACLJ is right that the deliberative process privilege generally does not "protect material that is purely factual." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). But the privilege *does* cover factual material when it is "so inextricably intertwined with the deliberative sections of

documents that its disclosure would inevitably reveal the government's deliberations." *Id.* This can occur, for example, when factual material has been "assembled through an exercise in judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action." *Welter*, 2026 WL 1243400, at *5 (quotation omitted).

Here, the FBI has sufficiently demonstrated that information withheld in the October 26, 2020, email was part of the deliberative process. The email at 9:44 AM makes clear that the personnel exchanging emails are considering further actions. *See* Second Napier Decl., Ex. A ("Wondering if we can/should [WITHHELD]. Let me know your thoughts."). The open-source report shared in the 9:29 AM email appears to be "pertinent material" "assembled through an exercise in judgement" to inform that consideration. *Welter*, 2026 WL 1243400, at *5. And the same is true of the "names of memoranda or other records" attached to the 9:44 AM email. Ms. Napier attests that these redacted materials were part of "collected information" that FBI employees were weighing as they deliberated about "whether to advise, and how to effectively advise, social media company personnel about specific threats." Second Napier Decl. ¶ 4. Viewing the email chain in context, Ms. Napier's assertion that the withheld materials were predecisional and deliberative is plausible and sufficiently supports the FBI's invocation of Exemption 5.

The second email chain highlighted by ACLJ is from June 2, 2020, and reads as follows:

From:  ☐
Subject: RE: Referrals for Twitter - Response
To: ☐ (FBI)
Cc: ☐ (FBI); ☐ (FBI); ☐ (FBI); ☐ (FBI)
Sent: June 2, 2020 4:34 PM (UTC-04:00)

EOC copies

From: ☐ (FBI) ☐
Sent: Tuesday, June 2, 2020 1:30 PM
To: ☐
Cc: ☐ (FBI) ☐ (FBI) ☐ (FBI) ☐ (FBI) ☐
Subject: Fw: Referrals for Twitter - Response

EOC,

For your awareness, I received notification of two Twitter accounts engaging in voter suppression and referred these to Twitter. Twitter informed me they have just taken them down. I've attached screenshots of the two accounts. I'm in coordination with ☐ to determine ☐ ☐. No actions needed from EOC.

Regards,
☐

☐

From: ☐ (FBI) ☐
Sent: Tuesday, June 2, 2020 01:23 PM
To: ☐ (FBI) ☐
Subject: RE: Referrals for Twitter - Response

Thanks ☐ for coordinating these referrals. In the EM call today, we discussed with ☐ the EOC tracking all activity related to the civil unrest activity, as Intel branch is pushing up a daily SITREP. Do you want to loop in ☐ ☐

☐

Second Napier Decl., Ex. C, ECF 34-5. ACLJ contends that the statement in the 1:30 PM email that there are "[n]o actions needed from EOC," indicates that the emails are describing an "action already taken." Pl.'s Reply 3. According to ACLJ, this suggests that the redactions cover "post-decisional acts" or "factual summary" that are not part of the deliberative process. Pl.'s Mot. 7.

ACLJ's challenge to this email chain is also unavailing. Indeed, the Court finds ACLJ's contention that the redacted materials are *not* predecisional and deliberative to be strained at best. The two sentences in question read as follows. From the 1:30 PM email, "I'm in coordination with [WITHHELD] to determine [WITHHELD]." Second Napier Decl., Ex. C. And from the 1:23 PM email, "Do you want to loop in [WITHHELD]." *Id.* Ms. Napier attests that the redacted information reflects predecisional "deliberation" between FBI agents about the "notification process and associated investigative strategy of referring posts to Twitter." Second Napier Decl. ¶ 7. Viewing the chain in context, this justification is eminently plausible. Both sentences plainly suggest ongoing coordination "to determine" the propriety of further action. The Court is satisfied that this information is predecisional and deliberative and is thus properly covered by Exemption 5.

### 2.    Foreseeable Harm

Having concluded that the FBI properly invoked the deliberative process privilege for its challenged withholdings under Exemption 5, the Court turns next to whether "it is reasonably foreseeable that release of [the withheld] materials would cause harm to an interest protected by that privilege." *Reps. Comm.*, 3 F.4th at 361; *see* 5 U.S.C. § 552(a)(8)(A)(i)(I). "In the context of withholdings made under the deliberative process privilege, the foreseeability requirement means that agencies must concretely explain how disclosure 'would'—not 'could'—adversely impair internal deliberations." *Reps. Comm.*, 3 F.4th at 369–70 (quoting *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020)). "[W]hat is needed is a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.* at 370.

11

Here, Ms. Napier attests that the email exchanges reflect an open dialogue between FBI personnel in which they share and debate "preliminary evaluation[s], opinions, suggestions, and recommendations" aimed at helping the agency reach the best possible decisions on significant issues (*e.g.*, how best to work with social media companies to combat disinformation and "malign influence in the United States' election process"). Napier Decl. ¶ 41. Ms. Napier says that releasing the withheld portions of the exchanges would cause various harms, which include creating a "chilling effect" on employees' willingness to freely share their views and to "participate fully" in the deliberative process if they know that their comments may later "become subject to public disclosure." *Id.* ¶ 42. This alleged harm "is within the core purpose of Exemption 5, which is 'to preserve open and frank discussion among government officials in order to enhance the quality of agency decisions.'" *Welter*, 2026 WL 1243400, at *7 (quoting *Inst. for Energy Rsch. v. FERC*, No. 22-cv-2114, 2023 WL 6121878, at *6 (D.D.C. Sept. 19, 2023)). Many "other courts in this District have concluded that similar interests are sufficient to support invoking Exemption 5." *Id.* (collecting cases). And this Court finds Ms. Napier's justification equally sufficient here to support the FBI's invocation of Exemption 5.

ACLJ's arguments to the contrary are not compelling. It offers general assertions about the public's interest in preventing the FBI from impermissibly suppressing free speech and about the dangers of courts allowing agencies to "over-apply exemptions" to avoid disclosing records. Pl.'s Mot. 8. The D.C. Circuit has explained, however, that no "balancing or consideration of public interest is called for under Exemption 5" in the same manner required by other FOIA exemptions. *See Rudometkin v. United States*, 140 F.4th 480, 492 (D.C. Cir. 2025) (cleaned up) (contrasting Exemption 5 to Exemption 7 under which disclosure of private information is balanced against public interests like exposing government misconduct). In apparent recognition of this authority,

ACLJ expressly disavowed in its reply that it seeks disclosure of the withheld material to reveal misconduct by FBI personnel. *See* Pl.'s Reply 5 n.4. While ACLJ is right to not rely on a misconduct exception, *see Rudometkin*, 140 F.4th at 492 ("[T]here is no controlling precedent recognizing a government misconduct exception to Exemption 5."), its only alternative argument is that "no legitimate agency interest" would be harmed by release of the records in question, Pl.'s Reply 5. As explained above, the Court disagrees. Nor does the Court see reason to conclude, as ACLJ suggests, that the FBI's approach to withholding in the specific records at issue is overbroad.

\*    \*    \*

In sum, the Court concludes that the FBI has properly invoked Exemption 5 to justify its withholdings with respect to the three days of email communications at issue.

### B.    Exemption 7

Turning next to the FBI's challenged withholdings under FOIA Exemption 7(E), the Court concludes that these too are properly supported.

FOIA Exemption 7(E) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7). While "[t]he exemption does not ordinarily protect routine techniques and procedures already well known to the public," it does "protect confidential details of programs if only their general contours are publicly known." *Elec. Frontier Found. (EFF) v. DOJ*, 384 F. Supp. 3d 1, 9–10 (D.D.C. 2019) (cleaned up). Exemption 7(E) also "sets a relatively low bar for the agency to justify withholding." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). "Rather than requiring a highly specific burden

13

of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (cleaned up).

ACLJ challenges the FBI's invocation of Exemption 7(E) to withhold portions of approximately 116 pages of email communications. *See* Monaghan Decl. ¶ 2, ECF No. 32-5; *id.*, Ex. 3, ECF No. 32-3. Ms. Napier attests that the information withheld by the FBI under Exemption 7(E) relates to "non-public investigative techniques and procedures utilized by the FBI to pursue its law enforcement mission, and also . . . non-public details about techniques and procedures that are otherwise known to the public." Napier Decl. ¶ 55. More specifically, she says that the FBI redacted information pertaining to: "non-public, sensitive investigative methods the FBI uses to collect and analyze information," *id.* ¶¶ 57–60; "the focuses of specific FBI counterintelligence investigative activities," *id.* ¶¶ 61–63; and "non-public, investigative details pertaining to the coordination with Other Government Agencies," *id.* ¶ 64. Ms. Napier asserts that release of this information could cause various harms, including enabling "subjects of FBI investigations and particularly[] foreign adversaries" to better anticipate, respond to, and circumvent the FBI's investigations and law enforcement efforts. *Id.* ¶¶ 59–60, 62. Having reviewed the challenged redactions under Exemption 7(E) and the FBI's thorough declaration supporting the withholdings, Napier Decl. ¶¶ 53–64, the Court is satisfied that the FBI has carried its burden to justify those withholdings, *see* Napier Decl. ¶ 25 (identifying all challenged withholdings).

The thrust of ACLJ's challenge to the FBI's withholdings under Exemption 7(E) is that the FBI's surveillance of social media is well-known and revealing the facts gathered through that

14

surveillance would not necessarily reveal anything about the FBI's surveillance techniques and procedures. Pl.'s Mot. 11–13. Based on this argument, ACLJ points to only two specific emails, both from October 26, 2020, that it contends have improperly withheld information.

The first is the previously discussed email sent at 9:29 AM. Second Napier Decl., Ex. A. ACLJ contends that the "open-source report" mentioned in that email is by definition publicly available and revealing its name or contents would not "reveal 'confidential details' about [the FBI's] 'ordinary procedures.'" Pl.'s Reply 5. The FBI's briefing does not specifically address this email in the context of Exemption 7(E), but the Court credits Ms. Napier's earlier explanation that releasing the withheld information would compromise "non-public investigative techniques." Napier Decl. ¶¶ 57–60. And in any event, the Court has already concluded that the redacted information about the "open-source report" was justifiably withheld under Exemption 5.

The second email is from 6:28 PM, and reads as follows:

---------- Forwarded message ----------
From: "☐(FBI)" ☐
Date: Oct 26, 2020 6:28 PM
Subject: Facebook announcement tomorrow/closehold
To: "☐(FBI)" ☐(FBI)"
☐(FBI)" ☐
(FBI)" ☐
Cc:

☐,

Here's what the Facebook press person told me. I am copying in my colleagues ☐ and ☐ for their awareness, and also ☐.

The announcement about the ☐

The announcement regarding an account linked to ☐

In both matters Facebook plans to say they received information from the FBI.

Facebook plans to post the announcement at 1130a PT. But they will do an embargoed press call an hour before hand.

15

Monaghan Decl., Ex. 3 at 4. ACLJ initially argued that the redacted information in the 6:28 PM email appeared to be a "summary of a press release." Pl.'s Mot. 13. Ms. Napier explained in her second declaration, however, that the redacted information actually "concerns non-public investigative details that would not be included in forthcoming press releases, and the conclusions that members of the public might be able to draw from the details that would be released." Second Napier Decl. ¶ 19. On reply, ACLJ asserts simply that even if the redacted facts are "non-public" they still may be subject to disclosure. Pl.'s Reply 5 ("It is clear that Facebook told the FBI something . . . and Plaintiff is entitled to see [it.]").

But the FBI has cleared the low bar necessary to justify withholding under Exemption 7(E). *See Blackwell*, 646 F.3d at 42. Ms. Napier's second declaration makes clear that the redacted information conveyed by Facebook to the FBI refers to "non-public investigative details." Second Napier Decl. ¶ 19. And her first declaration adequately explains how releasing such information could help the subjects of FBI investigations better understand the FBI's investigatory methods and capacities and thereby more easily circumvent the law. Napier Decl. ¶¶ 58–60; *see also Mayer*, 562 F.3d at 1194. Under the circumstances, Ms. Napier's attestations sufficiently justify the FBI's invocation of Exemption 7(E) for the redactions at issue.

Withholdings under Exemption 7(E), like any withholdings under 5 U.S.C. § 552, are subject to the requirement that an agency "reasonably foresee[] that disclosure would harm an interest protected by" the exemption invoked. 5 U.S.C. § 552(a)(8)(A)(i)(I). In the case of Exemption 7(E), however, the exemption itself only covers information that if disclosed "could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Accordingly, "[t]he proper assertion of 7(E) goes a long way to show the risk of foreseeable harm from disclosure." *See Kendrick v. FBI*, No. 20-cv-2900, 2022 WL 4534627, at *10 (D.D.C. Sept. 28,

2022). Here, in light of Ms. Napier's representations about how the withheld information could enable "[m]align foreign actors and adversaries" to evade the FBI's enforcement efforts and reduce their effectiveness, Second Napier Decl. ¶¶ 18–22, the FBI has adequately demonstrated foreseeable harm.

*    *    *

In sum, the Court concludes that the FBI has properly invoked Exemption 7(E) to justify the withholdings at issue.

### C.    Segregability

The final matter to address is segregability. "When a FOIA requester 'seeks a mixture of exempt and non-exempt records . . . an agency must segregate the non-exempt information from the exempt information, disclosing the former but not the latter." *EFF*, 384 F. Supp. 3d at 14 (quoting *Elec. Privacy Info. Ctr. v. IRS*, 910 F.3d 1232, 1237 (D.C. Cir. 2018)). "If, however, an agency adequately describes its segregability analysis and justifies its withholdings, 'a district court need not conduct its own in camera search for segregable non-exempt information unless the agency response is vague, its claims too sweeping, or there is a reason to suspect bad faith.'" *Id.* (quoting *Mead Data Cent. v. U.S. Dep't of Air Force*, 566 F.2d 242, 262 (D.C. Cir. 1977)).

Here, the Court is satisfied that the FBI has appropriately segregated protected information from non-exempt information. Ms. Napier's declarations adequately explain the FBI's efforts to segregate non-exempt information. *See* Napier Decl. ¶¶ 22, 24, 43, 66–67; Second Napier Decl. ¶ 26. Those declarations, which span 44 pages, along with the *Vaughn* index, identify the specific documents that the FBI redacted in full or in part. Napier Decl. ¶ 25; *id.*, Ex. O., ECF No. 31-15. And "[t]he record as a whole reveals that the FBI's explanation was detailed and sufficiently tailored" and that "there is no reason to suspect bad faith." *EFF,* 384 F. Supp. 3d at 15.

17

**CONCLUSION**

For all the above reasons, the Court concludes that the disputed information withheld by the FBI is properly protected from disclosure by FOIA Exemptions 5 and 7(E). Accordingly, the Court grants the FBI's Motion for Summary Judgment, ECF No. 30, and denies ACLJ's Motion for Summary Judgment, ECF No. 32.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:    June 3, 2026